## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CARVANA, LLC, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| CARVANT FINANCIAL LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Carvana, LLC, for its Complaint seeking declaratory judgement of trademark non-infringement against Carvant Financial LLC, alleges as follows:

## NATURE OF THE ACTION

1.     To resolve the pending controversy between Defendant Carvant Financial LLC and Plaintiff Carvana, LLC regarding Defendant's allegation that Plaintiff's CARVANA marks infringe Defendant's trademark, Plaintiff brings this action under the Declaratory Judgement Act, 28 U.S.C. § 2201, *et seq.*, seeking a declaration that, among other things, its CARVANA trademarks, used in connection with its online car dealership services do not infringe Defendant's trademark.

## PARTIES

2.     Plaintiff is an Arizona limited liability company, with its headquarters in Tempe, Arizona and with substantial business operations in Atlanta, Georgia.

3.     Founded in 2012, Plaintiff is a pioneer in online car sales. Plaintiff provides the Country's leading e-commerce platform for buying and selling used vehicles. Often, customers pick-up their vehicles at one of Plaintiff's 28 patented CARVANA vending machines, such as the new tower in Atlanta at 166 16th Street NW.

4.     Over the last nine years, Plaintiff has substantially built its CARVANA brand and marks, grown its technology and online platform, and become a publicly traded company.

5.     Plaintiff owns all federal, state, and common-law rights in and to its family of CARVANA marks (i.e., U.S. Reg. Nos. 4,328,785; 4,971,997; 5,022,315; and 6,037,292). *See* **Exhibits A–D**.

6.     Defendant is a Delaware company, with its principal place of business at 6851 Jericho Turnpike #245, Syosset, NY 11791.

7.     Defendant is a financial services company, providing sub-prime auto financing services to dealers to facilitate the dealers' transactions with their customers.

2

8.    Defendant owns a federal trademark registration (U.S. Reg. No. 3,907,376) for CARVANT for credit and loan services for purchasing, leasing and selling vehicles. *See* **Exhibit E**. The stated services are specifically described by Defendant on its website: "[W]e are an indirect finance company. This means that we purchase retail installment contracts, or car "notes" from dealerships. We do not lend money directly to individuals." **Exhibit F**.

9.    Defendant uses its trademark in combination with the word "Financial" as follows:



## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1338. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Lanham Act, 15 U.S.C. § 1051, *et seq.*

11.    This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has substantial, continuous, and systematic contacts with Georgia.

12.     On information and belief, Defendant regularly transacts business in Georgia, including by collecting Georgia–based loan customers and receiving loan payments from these Georgia customers.

13.     Defendant has, on information and belief, engaged in a sustained campaign of interacting with Georgia auto dealerships to purchase retail installment contracts and thereafter with Georgia residents for the collection of payment on such retail installment contracts, and, on information and belief, continues such interaction with Georgia residents today.

14.     Defendant has availed itself of Georgia's statutory and/or regulatory provisions governing motor vehicle sales financing over the last ten years and, on information and belief, has been a creditor in one or more Georgia consumer bankruptcy actions involving Georgia residents.

15.     Defendant's assertions of trademark infringement concern Plaintiff's use of its CARVANA marks in connection with end use customers in this District, to the prejudice of Plaintiff in this District, giving rise to Plaintiff's claim seeking declaratory relief.

16.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because Defendant is subject to personal jurisdiction in this District and a substantial

part of the events giving rise to Plaintiff's claim (namely Plaintiff's purportedly infringing use of its CARVANA trademark) occurred in this District.

17.     An actual case or controversy exists between the parties. Defendant has alleged that Plaintiff is engaged in trademark infringement and has demanded that Plaintiff either purchase Defendant's trademark for a very high sum or face a trademark infringement action. Defendant's action threatens injury to Plaintiff.

18.     A substantial portion of the activities that give rise to Defendant's (invalid) accusations of infringement have occurred in this District, which is one of Plaintiff's first and most significant markets, and where, therefore, a substantial portion of the purportedly infringing activities have occurred. In addition, a substantial portion of the prejudice caused by Defendant's laches has occurred in this District, where Plaintiff has made substantial investments during the period of Defendant's presence in this District, resulting in Defendant's unreasonable delay in asserting its (invalid) claims of trademark infringement.

## FACTUAL ALLEGATIONS

### Plaintiff's Years of Growth and Development of Goodwill

19.     From its founding in 2012 and the debut of its first flagship car vending machine in midtown Atlanta in early 2013, Plaintiff has pioneered a completely new way for consumers to buy or sell used cars online.

20.   By bypassing the traditional auto dealership infrastructure and replacing it with technology and exceptional customer service, all under its CARVANA marks, Plaintiff offers consumers an intuitive and convenient buying experience, transforming what was previously a tedious and time-consuming process into a single website visit enabling the consumer to complete the purchase or sale of a used car and schedule a next-day delivery or pick-up.

21.   The same city where Plaintiff sold its first car over eight years ago, Atlanta, is now home to the tallest CARVANA car vending machine in the U.S., standing a remarkable 12 stories high with a 43-vehicle capacity.



22.   Today, Atlanta-area customers can shop more than 30,000 vehicles and schedule as-soon-as-next-day pick up at the new Atlanta Car Vending Machine. Area customers may also choose touchless home delivery or opt for curbside delivery at Plaintiff's Marietta Street location.

23.     Since 2012, with its combined offerings of customer convenience and excellent customer service, Plaintiff has achieved substantial success and generated tremendous goodwill in its CARVANA marks. In just eight years, Plaintiff's revenue has grown 1000x, from $4.6 million in revenue in 2013 to over $5.5 billion in revenue in 2020.

24.     In 2017, Plaintiff conducted an initial public offering, raising $225 million and began to trade its stock on the New York Stock Exchange under the symbol CVNA.

25.     In response to the COVID-19 pandemic, Plaintiff introduced touchless delivery and pick-up in March 2020. In Q2 of 2020, while physical dealership sellers were closed because of the pandemic, Plaintiff reported a 25% year-over-year increase in vehicle sales.

26.     Dubbed the "Amazon of Auto" by the Houston Chronicle, in 2020 alone, Plaintiff sold 244,111 vehicles, making it the second largest used-car retailer in the U.S.

27.     In 2021, Carvana reported triple-digit revenue growth and record retail unit sales through the first half of the year.

28.     As of August 2021, Plaintiff's as-soon-as-next day delivery was available in 300 markets across the country.

29.    Plaintiff was named to the 2021 Fortune 500 List, one of the youngest companies to be added to the list.

30.    Plaintiff's website Carvana.com receives tens of millions of visitors per year and is among the top websites in the U.S. for consumer traffic in the vehicle website category.

31.    Over the last nine years, Plaintiff's market entry, growth and expansion was open and obvious to the business community, including Defendant, particularly as Defendant operated in this District.

<u>**Plaintiff's Trademark Registrations**</u>

32.    Plaintiff coined the mark CARVANA, which plays on "nirvana," and the positive connotation of serenity and bliss associated therewith.

33.    On April 11, 2011, Plaintiff applied to the United States Patent and Trademark Office (USPTO) for federal registration of its CARVANA mark for "online dealership services featuring automobiles" and "online financing services in the field of automobile loans."

34.    Notably, the USPTO did not raise an objection to the registration of CARVANA as a standard character mark based on Defendant's trademark registration.

35.     Also noteworthy, the USPTO published Plaintiff's application for opposition on January 17, 2012, providing an opportunity to any party allegedly damaged by the registration of the CARVANA mark to file a notice of opposition.

36.     Neither Defendant nor any other person filed an opposition, and, accordingly, Plaintiff's CARVANA Registration No. 4,328,785 issued April 30, 2013.

37.     On April 1, 2019, after five years of continuous (and prominent) use, Plaintiff filed a Declaration of Use and Incontestability under Lanham Act Sections 8 and 15, thereby perfecting its status as an Incontestable trademark pursuant to 15 U.S.C. § 1065.

38.     Consequently, the registration is "conclusive evidence" of Plaintiff's "exclusive right to use" its CARVANA trademark on the goods and services listed in the registration. 15 U.S.C. § 33(b).

39.     Because Plaintiff's CARVANA trademark registration is incontestable, its use of the mark is secure and cannot be disturbed.

40.     In subsequent years, Plaintiff secured additional United States federal trademark registrations for additional CARVANA marks, building a substantial family of CARVANA registered trademarks, including:

a.   U.S. Reg. No. 4,971,997 for CARVANACARE registered June 7, 2016, for extended warranty services, namely, service contracts;

b.   U.S. Reg. No. 5,022,315 for standard character mark CARVANA, registered August 16, 2016, for shipping, pickup, and delivery services for automobiles;

c.   U.S. Reg. No. 6,037,292 for design mark CARVANA (stylized letters: CARVANA) registered April 21, 2020, for online dealership services featuring automobiles, shipping, pickup, and delivery services for automobiles, and online financing services in the field of automobile loans.

41.   Of note, none of the trademark examiners in the USPTO reviewing these additional CARVANA trademark applications ever raised a concern or objection to registration of the CARVANA marks based on Defendant's registration.

42.   Likewise, Defendant never opposed any of Plaintiff's applications to register its several CARVANA registrations, nor did Defendant ever object to Plaintiff's prominent use of its CARVANA family of marks at the time of Plaintiff's substantial market introduction in Atlanta in 2013 or its public offering in 2017 or at any time during Plaintiff's meteoric growth and national market expansion, save

Defendant's demand in early 2021 that Plaintiff "purchase" its trademark for several million dollars.

### Defendant's Activities

43.     Based in Syosset, New York, Defendant is an indirect lender/finance company providing sub-prime auto financing services to dealers to facilitate the dealers' transactions with their customers.

44.     An indirect auto loan refers to an installment loan in which the lender, either the original issuer of the debt or the current holder of the debt, does not have direct interactions with the borrower. Indirect loans can be obtained through a third party with the help of an intermediary. Loans trading in the secondary market may also be considered indirect loans. Defendant operates in this space.

45.     On information and belief, Defendant markets its indirect lending/financial services under the tradename "Carvant Financial" and holds itself out to auto dealers as "[y]our source for competitive programs, commonsense approvals and fast funding" in the context of dealers selling or leasing vehicles. *See* **Exhibit G**.

46.     On information and belief, Defendant does not market auto financing to consumers directly, like a bank or credit union, but instead markets its indirect

lending/financing services to auto dealers, providing the same through a dealer network.

47.    On information and belief, Defendant does not, for example, allow a consumer to submit a credit application directly to Defendant to obtain pre-approved auto financing to then use at a dealer of the consumer's choice. On information and belief, consumers must apply to Defendant for financing through an auto dealer that is in Defendant's dealer network.

48.    Defendant does not operate as a retail auto dealership, nor does it provide online auto dealership services for the purchase or sale of used cars.

49.    Defendant does not sell cars online, nor does it engage in the delivery of vehicles purchased online or otherwise.

50.    Defendant does not buy cars from consumers or take cars in trade.

51.    Defendant does not offer car warranties or service cars.

52.    Defendant does not manage car inventories or engage in any functions involving those of a car dealership.

**Defendant's Trademark Registration**

In 2011, Defendant secured a registration (U.S. Reg. No. 3,907,376) for

, providing the following specimen of use:



53.     The services listed in the registration are "credit and loan services for purchasing, leasing and selling vehicles," which relates to Defendant's sub-prime auto financing services to auto dealers to facilitate the dealers' transactions with their customers.

54.     Defendant later filed a combined declaration of use and incontestability, relying on the following specimen of use:



**Defendant's Inaction and Acquiescence**

55.    Over the years, having expended billions of dollars in investment and growth, Plaintiff succeeded in building enormous goodwill in the CARVANA marks.

56.    In the ten years since Plaintiff applied for its CARVANA trademark in 2011, the aggregate of Plaintiff, the investment community, and the investing public have invested (in both equity and debt markets) billions of dollars in Plaintiff and the CARVANA business, confident that the CARVANA mark was valid, distinctive, and free of any claims of infringement by third parties.

14

57.     Plaintiff's entrepreneurial risks and successes, from a splashy market introduction in Atlanta in January 2013 to its meteoric growth since, have been widely reported in national media, are well known among consumers, and are closely followed by anyone connected to the auto industry.

58.     Defendant, undoubtedly aware of Plaintiff's use and registration of its CARVANA mark for many years, has slept on any purported rights while Plaintiff and its creditors and investors risked billions of dollars building its innovative business model and e-commerce platform.

59.     Now that CARVANA is well-established as Plaintiff's flagship brand, Defendant, after many years of inaction, seeks millions of dollars from Plaintiff in a trademark "purchase" based on unfounded assertions of trademark infringement.

60.     After years of silence, Defendant sent a cease and desist letter to Plaintiff on or about February 9, 2021, alleging trademark infringement.

61.     Through its demand, Defendant sought an exorbitant eight-figure amount for the "purchase" of its mark to resolve purported trademark infringement and related claims, all under threat of litigation.

62.     In subsequent communications, through its counsel, Defendant has continued to maintain its threat of litigation over Plaintiff.

63.     Given the importance of the CARVANA marks to Plaintiff, including its substantial goodwill in this District, and the investment Plaintiff has made in the CARVANA brand and marks over the last several years, Defendant's allegations of trademark infringement must be addressed now, and Defendant should not be allowed to persist in its efforts to create doubt and uncertainty over Plaintiff's bona fide use of its CARVANA marks.

## COUNT I

## Declaratory Judgement of No Trademark Infringement, False Designation of Origin, or Unfair Competition

64.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs 1–63.

65.     An actual, present, and justiciable controversy exists between Plaintiff and Defendant concerning Plaintiff's right to provide goods and services under its CARVANA marks free from Defendant's interference.

66.     Plaintiff's use of the CARVANA marks is not likely to cause customer confusion as to the source, affiliation, or sponsorship of Plaintiff's goods and services with Defendant's services. Confusion is not likely for numerous reasons, which at least include:

a.     The marks are not confusingly similar. Plaintiff's coined mark CARVANA, pronounced like the word "nirvana," immediately

conveys the concept of a state of serenity and bliss, "nirvana" to consumers. The "Carvant" portion of Defendant's "Carvant Financial" is pronounced like the word "car" + "vant" as in "ad*vant*age," conveys a different impression. The marks do not have a confusingly similar commercial impressions.

b.    Plaintiff's CARVANA mark does not include any element comparable to the design element of Defendant's mark and includes a "halo" and peaceful light blue color scheme, not the tire tread marks in Defendant's logo:

Plaintiff:    

Defendant:    

c.    Plaintiff's CARVANA mark is arbitrary and has no equivalent similar to Defendant's combination of the generic word "car" with an apparent root portion of the generic word "advantage."

d.      Defendant's mark, as it is actually used in commerce, is a composite prominently featuring "FINANCIAL" with "CARVANT," signifying that Defendant is a financial company, not a dealer.

e.      Defendant's mark is weak, and unlike Plaintiff's CARVANA mark, does not stand out in the trade as against the thousands or federal registrations using the term car as a formative portion of a mark generally, or the hundreds of such registrations in Defendant's trademark classification;

f.      Upon information and belief, third parties have and do use Defendant's mark on YouTube and elsewhere without enforcement by Defendant;

g.      Plaintiff and Defendant do not sell competing goods and services: Plaintiff is an online car dealership, selling to and buying cars from consumers online, providing direct-to-consumer financing and using a patented car vending tower and high-tech website features, all that allow consumers to view, consider, purchase, finance and arrange delivery of a vehicle in one website interaction, while Defendant provides indirect financing through a small network of auto dealers and does not directly market to retail consumers.

18

h.    Plaintiff and Defendant do not operate in the same sales channels: Plaintiff engages directly with customers seeking to buy or sell cars, while Defendant provides indirect financing to consumers through its network of auto dealers.

i.    Plaintiff and Defendant have peacefully coexisted for several years and were never considered by the USPTO to present a risk of likely confusion notwithstanding several instances of examination of the marks at issue.

j.    In their years of coexistence in the marketplace, to the best of Plaintiff's knowledge, no consumers have purchased either party's services because they were confused about the source of those services.

k.    Any alleged confusion by Defendant is not consumer confusion, nor occurs at point of purchase, nor consequential given the millions of transactions at issue.

67.    Plaintiff's use of the CARVANA marks in interstate commerce does not infringe Defendant's mark.

68.    Plaintiff's use of the CARVANA marks in interstate commerce and in particular in this District does not constitute false designation of origin.

19

69.   Plaintiff's use of the CARVANA marks in interstate commerce and in particular in this District does not constitute unfair competition.

70.   Defendant has suffered no, and will not suffer any, damages or loss of goodwill as a result of Plaintiff's use of the CARVANA marks.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.   Enter a judgement in favor of Plaintiff and against Defendant (1) declaring that Plaintiff's use of its CARVANA marks in the promotion, advertising, sale, and offer for sale of its goods and services does not constitute trademark infringement, false designation of origin, or unfair competition under the Lanham Act; (2) declaring that Defendant is not entitled to any injunctive relief with respect to Plaintiff's use of the CARVANA marks; (3) declaring that Defendant has not suffered and will not suffer any harm, and thus is not entitled to damages or other relief under the Lanham Act; and (4) declaring that Plaintiff is entitled to use its CARVANA marks, and that Defendant is not entitled to prevent or otherwise interfere with Plaintiff's use of the CARVANA marks;

B.     Award Plaintiff its costs of for this action and reasonable attorneys' fees; and

C.     Award Plaintiff such other and further relief as this Court deems just and proper.

Dated: August 20, 2021

Respectfully submitted,

/s/ *Lawrence K. Nodine*
Lawrence K. Nodine (Georgia Bar No. 545250)
nodinel@ballardspahr.com
Chittam U. Thakore (Georgia Bar No. 890965)
thakorec@ballardspahr.com
BALLARD SPAHR LLP
999 Peachtree St. NE, Suite 1600
Atlanta, GA 30309
Telephone: 678.420.9300
Fax: 678.420.9301

*Attorneys for Plaintiff Carvana, LLC*

*-and-*

Brian W. LaCorte (*pro hac vice* to be filed)
lacorteb@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Fax: 602.798.5595

*Of counsel for Plaintiff Carvana, LLC*