## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CARVANA, LLC,

        Plaintiff,

    v.

CARVANT FINANCIAL LLC,

        Defendant.

Civil Action No. 1:21-cv-03427-TCB

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Carvana, LLC ("Plaintiff") brings this action seeking a declaratory judgement that (i) its use of the CARVANA trademarks does not infringe the alleged trademark or tradename rights of Defendant Carvant Financial, LLC ("Defendant"), and (ii) Defendant has committed laches in Georgia and elsewhere and therefore cannot enforce its trademark/tradename rights as against Plaintiff. For its Complaint, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.    This pending trademark dispute has ties to Georgia and now involves this first-filed action in this District concerning Plaintiff's and Defendant's entry into the Georgia market under their respective trademarks several years ago, and Defendant's failure to act for a period of several years thereafter notwithstanding

1

alleged actual confusion in Georgia, and a second, later-filed action in the U.S. District Court for the Eastern District of New York (the "New York Action" (**Exhibit A**)) involving the same issues and Defendant's effort to enforce its tradename against plaintiff there. The central issue here concerns Defendant's allegation that Plaintiff's CARVANA marks infringe Defendant's trademark/tradename "Carvant Financial" and whether this allegation is actionable in light of Defendant's unreasonable delay in enforcing its purported rights. Plaintiff thus brings this action under the Declaratory Judgement Act, 28 U.S.C. § 2201, *et seq.*, seeking a declaration that, among other things, its CARVANA trademarks, used in connection with its online car dealership services do not infringe Defendant's trademark/tradename "Carvant Financial" and that Defendant's trademark infringement and related claims are barred by the doctrine of laches.

## PARTIES

2.     Plaintiff is an Arizona limited liability company, with its headquarters in Tempe, Arizona and with substantial business operations in Atlanta, Georgia.

3.     Founded in 2012, Plaintiff is a pioneer in online car sales. Plaintiff provides the Country's leading e-commerce platform for buying and selling used vehicles. Often, customers pick-up their vehicles at one of Plaintiff's 28 patented

CARVANA vending machines, such as the new tower in Atlanta at 166 16th Street NW.

4.      Over the last 9 years, Plaintiff has substantially built its CARVANA brand and marks, grown its technology and online platform, and become a publicly traded company.

5.      Plaintiff owns all federal, state, and common-law rights in and to its family of CARVANA marks (i.e., U.S. Reg. Nos. 4,328,785; 4,971,997; 5,022,315; and 6,037,292). *See* **Exhibits B–E**.

6.      Defendant is a Delaware company, with its principal place of business at 6851 Jericho Turnpike #245, Syosset, NY 11791.

7.      Defendant is a financial services company, providing sub-prime auto financing services to dealers to facilitate the dealers' transactions with their customers.

8.      Defendant registered as a foreign corporation authorized to do business in Georgia in 2010 and represented on its transactional website that Georgia was one of the states in which it did business.

9.      Defendant has a history of transacting business in this District by, among other things, debiting funds directly from Georgia banks for vehicle loan payments by Georgia customers, recording liens in Georgia relating to Georgia

customers, paying state and local taxes in Georgia relating to Georgia customers and secured collateral in Georgia, and undertaking collection activity in Georgia, all under the trade name "Carvant Financial."

10.    Defendant owns a federal trademark registration related to its tradename (U.S. Reg. No. 3,907,376) for CARVANT for credit and loan services for purchasing, leasing, and selling vehicles. *See* **Exhibit F**. The stated services are specifically described by Defendant on its website: "[W]e are an indirect finance company. This means that we purchase retail installment contracts, or car "notes" from dealerships. We do not lend money directly to individuals."  **Exhibit G.**[1]

11.    Defendant uses its trademark as a tradename in combination with the word "Financial" as follows:



12.    Defendant's use of this tradename in Georgia has and continues to be substantial in connection with its business transactions in this District with Georgia customers and through its direct transactional website made available to and used by Georgia customers under the masthead and tradename "Carvant Financial."

---

[1]  Yellow highlighting added to Exhibits G and I for the Court's convenience.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1338. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Lanham Act, 15 U.S.C. § 1051, *et seq.*

14.     This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has substantial, continuous, and systematic contacts with Georgia.

15.     Since 2010, Defendant has engaged in a sustained campaign of business transactions with Georgia customers under the tradename "Carvant Financial" by (i) presenting the arrangement of customer loan payments via a customer portal on the "Carvant Financial" website that allows Georgia customers to arrange for Defendant to draw funds directly from customers' Georgia banks via direct debit from their bank accounts for vehicle loan payments; (ii) recording or making other filings related to liens for securing "Carvant Financial" collateral involving Georgia customers' vehicles financed through "Carvant Financial"; (iii) requiring proof of Georgia insurance over secured collateral held by Defendant in Georgia under the tradename "Carvant Financial"; (iv) promoting on the "Carvant Financial" website at least as early as 2010 that Defendant "do[es] business" in Georgia, among only a handful of other states, (v) maintaining a certificate of authorization to conduct

5

business for the entity known as "Carvant Financial" in Georgia through at least 2016; and (vi) paying state and local taxes in Georgia as recently as 2020 (Defendant expressly acknowledges in its 2020 audited financial statements that Georgia is among only a handful of states that constitute a "taxing jurisdiction" for Defendant).

16.     Defendant's public representation in 2010 that it did business in Georgia relates to auto dealership affiliations or loan authorizations as seen in the 2010 Dealer FAQ webpage on Defendant's website listing Georgia in response to the question: "What states do you do business in?"[2]

17.     At least until 2016, Defendant was registered to do business in Georgia.

18.     Publicly available information, which is all that is available to Plaintiff because Defendant refused to consent to jurisdictional discovery, shows that Defendant transacts business in Georgia. For example, in describing Defendant's business on LinkedIn, Defendant's Director of Dealer Development lists Georgia as part of "[o]ur current market." **Exhibit H.**

19.     On information and belief, Defendant pays tax in Georgia because it is considered to own property in Georgia by virtue of its security involving vehicles owned by Georgia customers and financed through Defendant, which per

---

[2] An archived version of the 2010 webpage is available at https://web.archive.org/web/20100918000423/https://www.carvant.com/(S(im5ttm embuii31kghy4u1zos))/dealerfaq.aspx. **Exhibit I.**

Defendant's terms and conditions with Georgia customers, must be registered with Georgia motor vehicle officials and insured through local Georgia insurance agencies.

20.   Defendant provides its services, in part, through a customer portal and dealership portal on its website. **Exhibit A, ¶¶ 14, 23.**

21.   Defendant expressly provides its interactive website under its trademark/tradename for access by Georgia residents, where Defendant's customers, including Georgia-based loan customers, can update their residential address, arrange for automatic direct debit of loan payments, and manage customer accounts to access their account information, among other things. **Exhibit G.**

22.   On information and belief, Defendant's financing terms and conditions require Georgia customers to directly contact Defendant by phone or use Defendant's "Carvant Financial" website to update any new address in Georgia or new bank account in Georgia for payments, any new insurance in Georgia, and any new permanent location of the financed vehicle in Georgia.

23.   On information and belief, Defendant has used or continues to use GPS location devices on the vehicles of Georgia customers, as permitted under Georgia law, to allow it to disable the use of vehicles by Georgia customers who default on one or more loan payments under "Carvant Financial's" financing.

24.     On information and belief, Defendant has been involved in a multi-party dispute before the Consumer Financial Protection Bureau involving "Carvant Financial's" use of such GPS devices in Georgia and related Georgia-specific actions and regulations.

25.     On information and belief, Defendant directs communications to Georgia in an effort to collect vehicle financing.

26.     Defendant has availed itself of Georgia's statutory and/or regulatory provisions governing motor vehicle sales financing over the last ten years and, on information and belief, has been a creditor in one or more Georgia consumer bankruptcy actions involving Georgia residents.

27.     Defendant "consistently and prominently displays" its trademark/tradename in connection with its services across the United States. **Exhibit A, ¶¶ 21, 23.**

28.     Thus, Defendant uses its trademark/tradename "Carvant Financial" in Georgia in the course of its business dealings with Georgia auto dealerships and its Georgia-based loan customers.

29.     In fact, on information and belief, Defendant has systematically used its trademark/tradename "Carvant Financial" in this District and elsewhere in Georgia to transact business with Georgia customers for the last 11 years.

30.     Defendant's use of its trademark/tradename in the course of its business transactions in Georgia is related to Plaintiff's claim for declaratory judgement.

31.     For example, in the New York Action, filed on September 15, 2021, Defendant asserts trademark infringement and related causes of action against Plaintiff, relying (in part) on allegations of events that occurred in Georgia—namely, instances in Georgia of purported actual confusion of Defendant's trademark (used in Georgia) and Plaintiff's CARVANA marks—which allegations presume use by Defendant of its trademark/tradename in Georgia.[3] **Exhibit A, ¶ 39.**

32.     Further, Defendant's use of its trademark/tradename gives rise to its claim of trademark priority against Plaintiff and its attempted enforcement efforts against Plaintiff, wherein Defendant demanded millions of dollars from Plaintiff to avoid litigation.

33.     Defendant's assertions of trademark infringement and related claims thus are based (in part) on Plaintiff's use of its CARVANA marks in Georgia.

---

[3] Curiously, Defendant denies that it uses its trademark/tradename in Georgia (*see* Doc. 10-1, 14 (arguing that Defendant is "not engaged" in "**any business with Georgia**") (emphasis in original)). That denial is inconsistent with Defendant's allegation of confusion, which (in part) is based on purported examples of confusion in Georgia. For the avoidance of doubt, Plaintiff denies that there is any confusion in Georgia or elsewhere and further denies that the identified events in Georgia are evidence of actual confusion. The fact remains, however, that Defendant bases its claims of confusion on events that happened in Georgia.

34.    Moreover, at least since 2013, Defendant has unreasonably delayed in enforcing its rights, notwithstanding the clear and public market presence of and transaction of business by both Plaintiff and Defendant in Georgia for more than 8 years.

35.    Despite awareness of Plaintiff's open and public use of its CARVANA marks and Plaintiff's multi-million dollar investments in Georgia and elsewhere, Defendant has unreasonably delayed asserting its alleged trademark rights against Plaintiff, thereby causing prejudice to Plaintiff and giving rise to laches.

36.    A substantial portion of the prejudice resulting from Defendant's laches has occurred in this District, which prejudice has particularly affected Plaintiff in Georgia— the forum of Plaintiff's early and on-going brand-building investments.

37.    Georgia is a location where Defendant's alleged trademark rights have been infringement and the purported location of examples of reverse actual confusion giving rise to such claim.

38.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because Defendant is subject to personal jurisdiction in this District and a substantial part of the events giving rise to Plaintiff's claim (namely Plaintiff's purportedly infringing use of its CARVANA trademark and Defendant's use of its trademark/tradename in the course of its business) occurred in this District.

10

39.     An actual case or controversy exists between the parties. Defendant has alleged that Plaintiff is engaged in trademark infringement and has demanded that Plaintiff purchase Defendant's trademark for a very high sum and has filed the New York Action, specifically alleging purported actual confusion existing in Georgia.

40.     Defendant's action threatens injury to Plaintiff.

41.     A substantial portion of the activities that give rise to Defendant's (invalid) accusations of infringement have occurred in this District, which is one of Plaintiff's first and most significant markets, and where, therefore, a substantial portion of the purportedly infringing activities have occurred. In addition, a substantial portion of the prejudice caused by Defendant's laches has occurred in this District, where Plaintiff has made substantial investments during the period of Defendant's presence in this District, resulting in Defendant's unreasonable delay in asserting its (invalid) claims of trademark infringement.

## FACTUAL ALLEGATIONS

### Plaintiff's Years of Growth and Development of Goodwill

42.     From its founding in 2012 and the debut of its first flagship car vending machine in midtown Atlanta in early 2013, Plaintiff has pioneered a completely new way for consumers to buy or sell used cars online.

43.     By bypassing the traditional auto dealership infrastructure and replacing it with technology and exceptional customer service, all under its CARVANA marks, Plaintiff offers consumers an intuitive and convenient buying experience, transforming what was previously a tedious and time-consuming process into a single website visit enabling the consumer to complete the purchase or sale of a used car and schedule a next-day delivery or pick-up.

44.     The same city where Plaintiff sold its first car over eight years ago, Atlanta, is now home to the tallest CARVANA car vending machine in the U.S., standing a remarkable 12 stories high with a 43-vehicle capacity (depicted below). Plaintiff now has 28 patented vending machines across the U.S. featuring the CARVANA trademark.



45.     Today, Atlanta-area customers can shop more than 30,000 vehicles and schedule as-soon-as-next-day pick up at the new Atlanta Car Vending Machine.

Area customers may also choose touchless home delivery or opt for curbside delivery at Plaintiff's Marietta Street location.

46.     Since 2012, with its combined offerings of customer convenience and excellent customer service, Plaintiff has achieved substantial success and generated tremendous goodwill in its CARVANA marks. In just 8 years, Plaintiff's revenue has grown 1000x, from $4.6 million in revenue in 2013 to over $5.5 billion in revenue in 2020.

47.     In 2017, Plaintiff conducted an initial public offering, raising $225 million and began to trade its stock on the New York Stock Exchange under the symbol CVNA.

48.     In response to the COVID-19 pandemic, Plaintiff introduced touchless delivery and pick-up in March 2020. In Q2 of 2020, while physical dealership sellers were closed because of the pandemic, Plaintiff reported a 25% year-over-year increase in vehicle sales.

49.     Dubbed the "Amazon of Auto" by the Houston Chronicle, in 2020 alone, Plaintiff sold 244,111 vehicles, making it the second largest used-car retailer in the U.S.

50.     In 2021, Carvana reported triple-digit revenue growth and record retail unit sales through the first half of the year.

51.     As of August 2021, Plaintiff's as-soon-as-next day delivery was available in 300 markets across the country.

52.     Plaintiff was named to the 2021 Fortune 500 List, one of the youngest companies to be added to the list.

53.     Plaintiff's website Carvana.com receives tens of millions of visitors per year and is among the top websites in the U.S. for consumer traffic in the vehicle website category.

54.     Over the last 9 years, Plaintiff's market entry, growth and expansion was open and obvious to the business community, including Defendant, particularly as Defendant operated in this District.

**<u>Plaintiff's Trademark Registrations</u>**

55.     Plaintiff coined the mark CARVANA, which plays on "nirvana," and the positive connotation of serenity and bliss associated therewith.

56.     On April 11, 2011, Plaintiff applied to the United States Patent and Trademark Office (USPTO) for federal registration of its CARVANA mark for "online dealership services featuring automobiles" and "online financing services in the field of automobile loans."

57.     Notably, the USPTO did not raise an objection to the registration of CARVANA as a standard character mark based on Defendant's trademark registration.

58.     Also noteworthy, the USPTO published Plaintiff's application for opposition on January 17, 2012, providing an opportunity to any party allegedly damaged by the registration of the CARVANA mark to file a notice of opposition.

59.     Neither Defendant nor any other person filed an opposition, and, accordingly, Plaintiff's CARVANA Registration No. 4,328,785 issued April 30, 2013.

60.     On April 1, 2019, after five years of continuous (and prominent) use, Plaintiff filed a Declaration of Use and Incontestability under Lanham Act Sections 8 and 15, thereby perfecting its status as an Incontestable trademark pursuant to 15 U.S.C. § 1065.

61.     Consequently, the registration is "conclusive evidence" of Plaintiff's "exclusive right to use" its CARVANA trademark on the goods and services listed in the registration. 15 U.S.C. § 33(b).

62.     Because Plaintiff's CARVANA trademark registration is incontestable, its use of the mark is secure and cannot be disturbed.

63.     In subsequent years, Plaintiff secured additional United States federal trademark registrations for additional CARVANA marks, building a substantial family of CARVANA registered trademarks, including:

a.      U.S. Reg. No. 4,971,997 for CARVANACARE registered June 7, 2016, for extended warranty services, namely, service contracts;

b.      U.S. Reg. No. 5,022,315 for standard character mark CARVANA, registered August 16, 2016, for shipping, pickup, and delivery services for automobiles;

c.      U.S. Reg. No. 6,037,292 for design mark CARVANA (stylized letters: CARVANA) registered April 21, 2020, for online dealership services featuring automobiles, shipping, pickup, and delivery services for automobiles, and online financing services in the field of automobile loans.

64.     Of note, none of the trademark examiners in the USPTO reviewing these additional CARVANA trademark applications ever raised a concern or objection to registration of the CARVANA marks based on Defendant's registration.

65.     Likewise, Defendant never opposed any of Plaintiff's applications to register its several CARVANA registrations, nor did Defendant ever object to

Plaintiff's prominent use of its CARVANA family of marks at the time of Plaintiff's substantial market introduction in Atlanta in 2013 or its public offering in 2017 or at any time during Plaintiff's meteoric growth and national market expansion, save Defendant's demand in early 2021 that Plaintiff "purchase" its trademark for several million dollars.

### Defendant's Activities

66.    Based in Syosset, New York, Defendant is an indirect lender/finance company providing sub-prime auto financing services to dealers to facilitate the dealers' transactions with their customers.

67.    An indirect auto loan refers to an installment loan in which the lender, either the original issuer of the debt or the current holder of the debt, does not have direct interactions with the borrower. Indirect loans can be obtained through a third party with the help of an intermediary. Loans trading in the secondary market may also be considered indirect loans. Defendant operates in this space.

68.    On information and belief, Defendant markets its indirect lending/financial services under the tradename "Carvant Financial" and holds itself out to auto dealers as "[y]our source for competitive programs, commonsense approvals and fast funding" in the context of dealers selling or leasing vehicles. *See* **Exhibit J**.

69.     On information and belief, Defendant does not market auto financing to consumers directly, like a bank or credit union, but instead markets its indirect lending/financing services to auto dealers, providing the same through a dealer network.

70.     On information and belief, Defendant does not, for example, allow a consumer to submit a credit application directly to Defendant to obtain pre-approved auto financing to then use at a dealer of the consumer's choice. On information and belief, consumers must apply to Defendant for financing through an auto dealer that is in Defendant's dealer network.

71.     Defendant does not operate as a retail auto dealership, nor does it provide online auto dealership services for the purchase or sale of used cars.

72.     Defendant does not sell cars online, nor does it engage in the delivery of vehicles purchased online or otherwise.

73.     Defendant does not buy cars from consumers or take cars in trade.

74.     Defendant does not offer car warranties or service cars.

75.     Defendant does not manage car inventories or engage in any functions involving those of a car dealership.

**<u>Defendant's Trademark Registration</u>**

In 2011, Defendant secured a registration (U.S. Reg. No. 3,907,376) for

, providing the following specimen of use:

76.     The services listed in the registration are "credit and loan services for purchasing, leasing and selling vehicles," which relates to Defendant's sub-prime auto financing services to auto dealers to facilitate the dealers' transactions with their customers.

77.     Defendant later filed a combined declaration of use and incontestability, relying on the following specimen of use:



**Defendant's Inaction and Acquiescence**

78.     Over the years, having expended billions of dollars in investment and growth, Plaintiff succeeded in building enormous goodwill in the CARVANA marks.

79.     In the 10 years since Plaintiff applied for its CARVANA trademark in 2011, the aggregate of Plaintiff, the investment community, and the investing public have invested (in both equity and debt markets) billions of dollars in Plaintiff and the CARVANA business, confident that the CARVANA mark was valid, distinctive, and free of any claims of infringement by third parties.

80.     Plaintiff's entrepreneurial risks and successes, from a splashy market introduction in Atlanta in January 2013 to its meteoric growth since, have been widely reported in national media, are well known among consumers, and are closely followed by anyone connected to the auto industry.

81.     Defendant, undoubtedly aware of Plaintiff's use and registration of its CARVANA mark for many years, has slept on any purported rights while Plaintiff and its creditors and investors risked billions of dollars building its innovative business model and e-commerce platform.

82.     Now that CARVANA is well-established as Plaintiff's flagship brand, Defendant, after many years of inaction, seeks millions of dollars from Plaintiff in a trademark "purchase" based on unfounded assertions of trademark infringement.

83.     After years of silence, Defendant sent a cease and desist letter to Plaintiff on or about February 9, 2021, alleging trademark infringement.

84.     Through its demand, Defendant sought an exorbitant eight-figure amount for the "purchase" of its mark to resolve purported trademark infringement and related claims, all under threat of litigation.

85.     In subsequent communications, through its counsel, Defendant continued to maintain its threat of litigation over Plaintiff.[4]

86.     Given the importance of the CARVANA marks to Plaintiff, including its substantial goodwill in this District, and the investment Plaintiff has made in the CARVANA brand and marks over the last several years, Defendant's allegations of trademark infringement must be addressed now, and Defendant should not be allowed to persist in its efforts to create doubt and uncertainty over Plaintiff's bona fide use of its CARVANA marks.

## COUNT I

## Declaratory Judgement of No Trademark Infringement, False Designation of Origin, or Unfair Competition

87.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs 1–86.

88.     An actual, present, and justiciable controversy exists between Plaintiff and Defendant concerning Plaintiff's right to provide goods and services under its CARVANA marks free from Defendant's interference.

89.     Plaintiff's use of the CARVANA marks is not likely to cause customer confusion as to the source, affiliation, or sponsorship of Plaintiff's goods and

---

[4] Three weeks after Plaintiff served Defendant with its initial Complaint, Defendant filed the New York action.

services with Defendant's services. Confusion is not likely for numerous reasons, which at least include:

a.   The marks are not confusingly similar. Plaintiff's coined mark CARVANA, pronounced like the word "nirvana," immediately conveys the concept of a state of serenity and bliss, "nirvana" to consumers. The "Carvant" portion of Defendant's "Carvant Financial" is pronounced like the word "car" + "vant" as in "ad***vant***age," conveys a different impression. The marks do not have a confusingly similar commercial impressions.

b.   Plaintiff's CARVANA mark does not include any element comparable to the design element of Defendant's mark and includes a "halo" and peaceful light blue color scheme, not the tire tread marks in Defendant's logo:



Plaintiff:

Defendant:

c.      Plaintiff's CARVANA mark is arbitrary and has no equivalent similar to Defendant's combination of the generic word "car" with an apparent root portion of the generic word "advantage."

d.      Defendant's mark, as it is actually used in commerce, is a composite prominently featuring "FINANCIAL" with "CARVANT," signifying that Defendant is a financial company, not a dealer.

e.      Defendant's mark is weak, and unlike Plaintiff's CARVANA mark, does not stand out in the trade as against the thousands of federal registrations using the term car as a formative portion of a mark generally, or the hundreds of such registrations in Defendant's trademark classification;

f.      Upon information and belief, third parties have and do use Defendant's mark on YouTube and elsewhere without enforcement by Defendant;

g.      Plaintiff and Defendant do not sell competing goods and services: Plaintiff is an online car dealership, selling to and buying cars from consumers online, providing direct-to-consumer financing, and using a patented car vending tower and high-tech website features, all that allow consumers to view, consider, purchase, finance, and arrange delivery of a vehicle in one website interaction, while Defendant

provides indirect financing through a small network of auto dealers and does not directly market to retail consumers.

h.  Plaintiff and Defendant do not operate in the same sales channels: Plaintiff engages directly with customers seeking to buy or sell cars, while Defendant provides indirect financing to consumers through its network of auto dealers.

i.  Plaintiff and Defendant have peacefully coexisted for several years and were never considered by the USPTO to present a risk of likely confusion notwithstanding several instances of examination of the marks at issue.

j.  In their years of coexistence in the marketplace, to the best of Plaintiff's knowledge, no consumers have purchased either party's services because they were confused about the source of those services.

k.  Any alleged confusion by Defendant is not consumer confusion, nor occurs at point of purchase, nor consequential given the millions of transactions at issue.

90.  Plaintiff's use of the CARVANA marks in interstate commerce does not infringe Defendant's trademark/tradename.

91.   Plaintiff's use of the CARVANA marks in interstate commerce and in particular in this District does not constitute false designation of origin.

92.   Plaintiff's use of the CARVANA marks in interstate commerce and in particular in this District does not constitute unfair competition.

93.   Defendant has suffered no, and will not suffer any, damages or loss of goodwill as a result of Plaintiff's use of the CARVANA marks.

## COUNT II

## Declaratory Judgement That Defendant's Claims Are Barred by the Doctrine of Laches

94.   Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs 1–86.

95.   Defendant alleges that Plaintiff has and continues to infringe its federally registered and common law rights in its trademark and, as a result, that Plaintiff has engaged in unfair competition, false designation of origin, and deceptive trade practices and has injured Defendant's business reputation.

96.   Plaintiff, however, entered the national market with a substantial launch in 2012 and, in January 2013, debuted its first car vending machine in Atlanta, Georgia, to great fanfare. Since its launch, Plaintiff has used its CARVANA trademarks in Georgia and throughout the nation.

97.    Plaintiff has enjoyed uninterrupted use of its CARVANA trademarks in Georgia for more than eight years and has come to rely on its ability to use the CARVANA trademarks without interference from Defendant in Georgia and nationwide.

98.    Because both Defendant and Plaintiff have been present in the Georgia market since 2013, Defendant knew or should have known that Plaintiff was using the CARVANA marks at least eight years ago.

99.    Defendant, however, without excuse, waited for at least eight years to first allege claims of nationwide trademark infringement by Plaintiff.

100.    Plaintiff relied on the unchallenged use of its CARVANA marks in Georgia—where it debuted its first car vending machine in Atlanta—and nationwide, investing substantial resources in building its brand by, for example, building 28 patented car vending machines across the U.S., the tallest of which is in Atlanta, and building CARVANA curbside vehicle delivery locations in Georgia and elsewhere in the U.S.

101.    Defendant's inexcusable delay in failing to assert its purported rights in its trademark against Plaintiff has caused, and continues to cause, prejudice and damage to Plaintiff.

102.    Defendant's claims are barred by the doctrine of laches.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.    Enter a judgement in favor of Plaintiff and against Defendant (1) declaring that Plaintiff's use of its CARVANA marks in the promotion, advertising, sale, and offer for sale of its goods and services does not constitute trademark infringement, false designation of origin, or unfair competition under the Lanham Act; (2) declaring that Defendant is not entitled to any injunctive relief with respect to Plaintiff's use of the CARVANA marks; (3) declaring that Defendant has not suffered and will not suffer any harm, and thus is not entitled to damages or other relief under the Lanham Act; and (4) declaring that Plaintiff is entitled to use its CARVANA marks, and that Defendant is not entitled to prevent or otherwise interfere with Plaintiff's use of the CARVANA marks;

B.    Enter a judgement that Defendant's claims of trademark infringement, unfair competition, false designation of origin, and deceptive trade practices are barred by the doctrine of laches;

C.     Award Plaintiff its costs of for this action and reasonable attorneys' fees; and

D.     Award Plaintiff such other and further relief as this Court deems just and proper.

Dated: October 6, 2021

Respectfully submitted,

/s/ *Lawrence K. Nodine*

Lawrence K. Nodine (Georgia Bar No. 545250)
nodinel@ballardspahr.com
Chittam U. Thakore (Georgia Bar No. 890965)
thakorec@ballardspahr.com
BALLARD SPAHR LLP
999 Peachtree St. NE, Suite 1600
Atlanta, GA 30309
Telephone: 678.420.9300
Fax: 678.420.9301

*Attorneys for Plaintiff Carvana, LLC*

*-and-*

Brian W. LaCorte (*pro hac vice*)
lacorteb@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Fax: 602.798.5595

*Of counsel for Plaintiff Carvana, LLC*

29

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2021, a true and correct copy of

PLAINTIFF'S FIRST AMENDED COMPLAINT was electronically filed with the

Clerk of Court using CM/ECF, which will automatically send an email notification

of the filing to all attorneys on record in this case.

/s/ Lawrence K. Nodine
Lawrence K. Nodine
(Georgia Bar No. 545250)
nodinel@ballardsphar.com
BALLARD SPAHR LLP

*Counsel for Plaintiff Carvana, LLC*

30